IN THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ALEXANDRA BEAUTYMAN,

      Plaintiff,

v.

GUARDIAN LIFE INSURANCE
COMPANY,

      Defendant.

Civil Action No. 3:25-cv-2068

## COMPLAINT FOR RECOVERY OF PLAN BENEFITS AND FOR THE ENFORCEMENT OF RIGHTS UNDER ERISA

Plaintiff, Alexandra Beautyman, makes the following representations to the Court for the purpose of obtaining relief from Defendant's refusal to pay long term disability (LTD) benefits due under an ERISA employee benefit plans, and for Defendant's other violations of the Employee Retirement Security Act of 1974 ("ERISA"):

## JURISDICTION AND VENUE

1.      This Court's jurisdiction is invoked pursuant to 28 U.S.C. § 1337 and 29 U.S.C. § 1132(e) (ERISA § 502(e)).  Plaintiff's claims "relate to" "employee welfare benefits plan[s]" as defined by ERISA, 29 U.S.C. § 1001 *et seq*. and the subject Benefit Plan constitutes "plan[s] under ERISA."

2.      The ERISA statute, at 29 U.S.C. § 1133, as well as Department of Labor regulations, at 29 C.F.R. § 2560.503-1 provide a mechanism for administrative or internal appeal of benefits denials. In this case, those avenues of appeal have been exhausted and this matter is now properly before this court for judicial review.

1

3.      Venue is proper within the District of Connecticut pursuant to 29 U.S.C. § 1132(e)(2).

## PARTIES

4.      Plaintiff, Alexandra Beautyman, (hereinafter "Plaintiff"), is currently a resident of New Haven County, Connecticut.

5.      Defendant Guardian Life Insurance Company (hereinafter "Guardian"), is a foreign insurance company authorized to transact the business of insurance in this state, and may be served with process through its agent for service of process the Connecticut Insurance Commissioner, at 153 Market Street, Hartford, CT, 06103.

6.      Defendant Guardian is the party obligated to pay benefits and to determine eligibility for benefits under Group Long Term Disability Policy No. 00036339, issued by Guardian to Arcadia Power, Inc. (Arcadia).

## FACTS

7.      Plaintiff was employed by Arcadia.

8.      By virtue of her employment, Plaintiff was enrolled in the Arcadia Power Disability Plan, which is an ERISA employee welfare benefit plan (the "Plan").

9.      Benefits under the Plan are insured by Guardian under Group Long Term Disability Policy No. 00036339, issued by Guardian to Arcadia.

10.     Plaintiff is a participant or beneficiary of the Plan.

11.     On May 15, 2023, Plaintiff became unable to work due to the severe and debilitating effects of infertility treatments and associated medical conditions, which rendered her unable to perform the essential duties of her occupation while covered under the Plan.

12.    Plaintiff's symptoms of brain fog, fatigue, poor concentration, and cognitive fatigue are consistently documented by her treating providers, including Dr. Jacqueline Gutmann (Reproductive Endocrinologist) and Dr. Karina Burda (Neurologist). Both providers validated the claimant's symptoms as credible and directly linked them to her medical conditions related to the toll of infertility treatments.

13.    Under the Plan, a participant is considered disabled if they are unable to perform the material and substantial duties of their own occupation due to sickness or injury. Plaintiff's documented cognitive impairments, including brain fog, poor concentration, and cognitive fatigue, prevent her from performing the essential duties of her occupation as a software security engineer, which requires sustained mental focus, problem-solving, and attention to detail.

14.    Plaintiff has been and continues to be disabled as defined by the provisions of the Plan and relevant policies.

15.    Plaintiff filed a timely application for short term disability (STD) benefits under the Plan.

16.    Guardian approved Plaintiff's application for STD benefits and paid benefits through the maximum period, until August 20, 2023.

17.    Guardian transferred Plaintiff's claim to LTD and approved her claim from August 21, 2023, through May 27, 2024.

18.    On May 30, 2024, Guardian abruptly and unjustifiably terminated Plaintiff's LTD claim, retroactively cutting off benefits as of May 27, 2024, despite the overwhelming evidence of her continued disability. Guardian based its decision on its assessment that there was a lack of objective evidence to prove her disability.

19.     Guardian's reliance on a purported lack of "objective evidence" to support its termination of benefits is inconsistent with its prior approval of Plaintiff's claim. For months, Guardian accepted Plaintiff's documented symptoms of brain fog, cognitive fatigue, and poor concentration as credible and sufficient to establish her disability under the Plan. Guardian's sudden insistence on additional "objective evidence"—without ever requesting such evidence during the months it approved and paid benefits—demonstrates a failure to provide a full and fair review of Plaintiff's claim as required under ERISA.

20.     Plaintiff appealed the termination of her benefits by letter dated September 20, 2024, supporting the appeal by providing letters from treating providers, an Electroencephalography (EEG) Analysis and Report correlating with her symptoms of brain fog, cognitive fatigue, and poor concentration; objective neuropsychological testing; cognitive rehabilitation records; and a personal statement. This evidence collectively demonstrated the severity of her symptoms, their impact on her ability to work, and the ongoing nature of her treatment. The appeal also highlighted Guardian's failure to request additional information before denying the claim, despite the availability of objective evidence supporting her disability.

21.     In post-denial correspondence, dated November 14, 2024 and March 5, 2025, Guardian expanded it had developed a new basis for denying Plaintiff's claim, now pointing to its failure to see evidence of worsening symptoms.

22.     Guardian's reliance on the absence of worsening symptoms is inconsistent with its prior approval of benefits. The Plan's definition of disability does not require a claimant's condition to worsen over time; it only requires that the claimant remain unable to perform the material and substantial duties of her occupation. By focusing on the lack of worsening

symptoms, Guardian effectively ignored the ongoing nature of her impairments and their impact on her ability to work.

23.    Also, Guardian's new rationale was arbitrary because it failed to identify any evidence of improvement in Plaintiff's condition or symptoms. Guardian had previously determined that Plaintiff was disabled under the terms of the Plan and paid benefits for months based on the same medical evidence and symptoms it later claimed were insufficient. At no point in its termination decision did Guardian cite any medical records, physician opinions, or other evidence suggesting that Plaintiff's condition had improved or that her symptoms had resolved to the extent that she could return to work. Instead, Guardian abruptly reversed its position without justification, despite the absence of any material change in Plaintiff's medical condition.

24.    On July 11, 2025, Guardian denied that appeal, and stated that its decision was final.

25.    Guardian's final denial did not correct the errors and arbitrary findings it made in its initial denial or subsequent correspondence.

26.    Additionally, among other new problems, Guardian's final denial failed to account for the policy's definition of disability, which focuses on Plaintiff's ability to perform her "Own Occupation." Plaintiff's occupation requires advanced technical skills, rapid problem-solving, and the ability to manage complex security systems under pressure. The medical evidence demonstrates that her symptoms preclude her from performing these duties on a full-time basis.

27.    By dismissing the treating providers' opinions and objective findings, the insurer has failed to conduct a fair and thorough evaluation of the claimant's disability. The denial is

inconsistent with the policy's terms and the weight of the evidence, making it arbitrary and unreasonable.

28.    Plaintiff has exhausted her administrative remedies under the Plan.

29.    The Plan does not contain an appropriate grant of discretion to Guardian; therefore, the Court should review Guardian's decision under the de novo standard of review.

30.    Guardian would pay any benefits due out of its own funds.

31.    Guardian owed Plaintiff duties as a fiduciary of the ERISA Plan, including the duty of loyalty.

32.    Guardian was under a perpetual conflict of interest because the benefits would have been paid out of its own funds.

33.    Guardian improperly allowed its financial self-interest to influence its decision-making, prioritizing cost savings over its fiduciary duty to fairly evaluate Plaintiff's claim.

34.    Guardian breached its fiduciary duties to Plaintiff, including the duty of loyalty.

**FIRST CAUSE OF ACTION**
**FOR PLAN BENEFITS PURSUANT TO 29 U.S.C. § 1132(a)(1)(B)**

PLAINTIFF incorporates the allegations contained in the above paragraphs as if fully stated herein and says further that:

35.    Under the terms of the Plan and policy, Defendant agreed to provide Plaintiff with LTD benefits in the event that Plaintiff became disabled as defined by the Plan.

36.    Plaintiff is disabled and entitled to benefits under the terms of the Plan.

37.    Defendant failed to provide benefits due under the terms of the Plan, and these denials of benefits to Plaintiff constitute breaches of the Plan.

38.    The decisions to deny benefits were wrong under the terms of the Plan.

39.     The decisions to deny benefits and decision-making processes were arbitrary and capricious.

40.     The decisions to deny benefits were influenced by the Defendant's financial conflict of interest.

41.     The decisions to deny benefits were not supported by substantial evidence in the record.

42.     As a direct and proximate result of the aforementioned conduct of the Defendant in failing to provide benefits for Plaintiff's disability, Plaintiff has been damaged in the amount equal to the amount of benefits to which she would have been entitled to under the Plan.

43.     As a direct and proximate result of the aforementioned conduct of the Defendant in failing to provide benefits for Plaintiff's disability, Plaintiff has suffered, and will continue to suffer in the future, damages under the Plan, plus interest and other damages, for a total amount to be determined.

## PRAYER FOR RELIEF

WHEREFORE. Plaintiff requests that this Court grant her the following relief in this case:

**On Plaintiff's First Cause of Action:**

1.     A finding in favor of Plaintiff against the Defendant;

2.     Damages in the amount equal to the disability income benefits to which she was entitled through the date of judgment, for unpaid benefits pursuant to 29 U.S.C. § 1132(a)(1)(B);

3.     In the alternative, should the court find Defendant's decision to be arbitrary and capricious or wrong, but be unable to make a finding of disability through the date of the judgment based on the current record, Plaintiff requests an Order remanding the claim for appropriate consideration.

4.     Prejudgment and postjudgment interest;

5.      An Order requiring the Plan or appropriate Plan fiduciaries to pay continuing benefits in the future so long as Plaintiff remains disabled under the terms of the Plan, as well as any other collateral benefits to which she might be entitled on the basis of being disabled under the LTD plan.

6.      Plaintiff's reasonable attorney fees and costs; and

7.      Such other relief as this court deems just and proper.

Dated this 11th day of December, 2025.

Respectfully submitted,

ERIC BUCHANAN & ASSOCIATES, PLLC
ATTORNEYS FOR PLAINTIFF


BY:     */s/ Hudson T. Ellis*
        Hudson T. Ellis (Bar No. CT30233)
        414 McCallie Avenue
        Chattanooga, TN 37402
        (423) 634-2506
        FAX: (423) 634-2505
        ellish@buchanandisability.com